UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Dennis A. Smith

   v.                                                Civil No. 07-cv-119-SM

Commissioner, New Hampshire Department
of Corrections, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Dennis A. Smith moves for reconsideration[1] (document no. 30) of my report and recommendation (document no. 26) on the basis that it fails to address a cause of action raised in his amended complaint (document no. 23). For the reasons stated below, Smith's motion is granted. Upon consideration of the motion and amended complaint, I find that Smith has alleged Fourteenth Amendment due process claims against William L. Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), John C. Vinson, NHDOC Staff Attorney, and Bruce W. Cattell, Warden of the New Hampshire State Prison ("NHSP"). I recommend dismissal of all remaining claims.

---

[1] In accordance with Judge McAuliffe's order of September 5, 2007 (document no. 31), Smith's objection to the report and recommendation is construed as a motion for reconsideration.

STANDARD OF REVIEW

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520–21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and an unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

BACKGROUND

Smith is a NHSP inmate who is currently incarcerated at the Ellis I Unit in Huntsville, Texas. The claims in this action stem from his involuntary interstate prison transfer from the NHSP to Texas and the alleged denial of adequate medical care during his interstate transfer and upon his arrival and incarceration in Texas. The underlying facts in this action are set forth in my previous report and recommendation and will not be repeated here. The facts alleged in the amended complaint are discussed more fully below.

DISCUSSION

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Here, Smith alleges that defendants, acting

under color of state law, denied him due process in violation of his Fourteenth Amendment rights.  He also reasserts an Eighth Amendment claim premised upon the denial of adequate medical care against Vinson.

    A.    Denial of Due Process

Smith alleges that Wrenn, Vinson and Cattell violated his Fourteenth Amendment due process rights by failing to review and/or implement prison policies and procedures that would (1) require prison officials to update his medical summary and records prior to, or at the time of, his actual transfer; and 2) ensure that he was monitored and provided with adequate medical care while in transit to an out-of-state facility.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The Supreme Court has recognized that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." Id. at 222 (citing Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974)). "But these interests will be generally limited to freedom from

restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted). "After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484).

Where the alleged conditions of confinement support an Eighth Amendment claim that prison officials may have failed to provide humane conditions of confinement, such as medical care, courts have held that the allegations may also support a denial of due process under Sandin as "atypical and significant" hardships. See Beasley v. Waddington, No. C05-5388RBL, 2006 WL 1375088, slip. op at *5 (W.D. Wash. 2006) (holding that where alleged conditions of confinement support a claim that prison

officials may have failed to provide humane conditions of confinement, such as substantial deficiencies in food, clothing, shelter and medical care, the allegations may also support a denial of due process under Sandin as "atypical and significant" hardships."); accord Slusher v. Samu, No. 04-cv-02187-PSF-BNB, 2006 WL 3371636, slip op. at *7 (D. Colo. 2006).

In this action, Smith alleges that Wrenn and Cattell are responsible for the operations of the NHSP and/or the review and implementation of NHDOC policy and procedure directives. He further alleges that Vinson has substantial knowledge of the daily operating procedures at the NHSP and is responsible for reviewing NHDOC policy and procedure directives before they are approved by the Commissioner. Defendants allegedly failed to adequately review and/or implement prison policies and procedures that would (1) require prison officials to update an inmate's medical summary and records prior to, or at the time of, his actual transfer; and (2) require a transferred inmate, like Smith, to be monitored and provided with adequate medical care while in transit to an out-of-state facility.

Specifically, Smith alleges that NH Dep't of Corr. Policy and Procedure Directive ("PPD") 1.29 and 6.17, fail to ensure that prisoners are monitored and provided with adequate medical

care while in transit to an interstate facility.[2]  First, he

---

[2]PPD 1.29, III provides:

When an inmate is transferred or recommended for transfer to another institution (federal, state or county) , the inmate's classification, medical/dental, and mental health files will be reviewed.  Copies of the appropriate documents will be made and assembled in a transfer folder to provide the receiving agency with all the documents necessary for continuity of correctional programming and care.  Updated case files will be transferred simultaneously or within 48 hours of the inmate's transfer (for county transfers only).

PPD 1.29, IV.C.1 provides, in relevant part:

Data to be placed in the transfer folder includes: Medical/dental information that relates to ongoing medical conditions and any other appropriate medical/dental data.

PPD 6.17, I provides that its purpose is:

To provide current medical, mental health and dental status of transferring inmates to the receiving institution.

PPD 6.17, III provides:

It is the policy of the Department of Corrections to prepare a Transfer/Discharge Summary to be sent with the offender record of every inmate being transferred to another institution.

PPD 6.17, IV, a and B provide, in relevant part:

A.   The following officers will provide written notification at least 7 working days in advance of a schedule transfer of an inmate to another facility: . . . The Interstate Compact Officer for out of state transfer.

B.   Health Services/Mental Health will complete the discharge/transfer summary (attachment 1) and send it to Classification for county transfers of the Interstate

alleges that PPD 1.29 requires that a prisoner's classification, medical, dental and mental health files be updated and transferred within 48 hours of an inmate's transfer.  Smith argues that the protections provided in PPD 1.29 apply only to county transfers and not to interstate transfers.  When an inmate, like Smith, is transferred out-of-state, he allegedly is denied certain protections, such as updated medical files and, therefore, is at risk of being denied adequate care for his ongoing medical conditions.  Second, Smith alleges that PPD 6.17 is "unconstitutionally vague by failing/refusing to include the words 'updated.'"  As a result, when an inmate, like Smith, is transferred out-of-state, he is denied an updated medical summary and records.

As a result of defendants' failure to adequately review and implement policies and procedures to protect inmates who are transferred out-of-state, Smith allegedly was denied adequate medical care during and after his transfer to an out-of-state facility in Texas.  In addition, he allegedly suffered an exacerbation of his medical condition, wanton and unnecessary

---

Compact Office for out of state transfers, where a packet of all relative inmate data will be prepared and given to the Transportation Team for delivery . . .

infliction of pain, mental anguish and severe emotional distress. Smith claims that defendants' acts and omissions constitute: (1) intentional interference with prescribed medical treatment; (2) foreseeable and unreasonable risk of current and future harm; and (3) reckless disregard for and/or a deliberate indifference to his health and safety.  To the extent Smith alleges that the conditions imposed on him by the defendants constitute atypical and significant hardships, I find that he has stated cognizable Fourteenth Amendment due process claims against Wrenn, Vinson and Cattell.

   B.   Denial of Adequate Medical Care

   Smith reasserts that Vinson denied him adequate medical care in violation of his Eighth Amendment rights.  The amended complaint alleges that "Vinson displayed a callous and knowing indifference to the health and safety of the plaintiff by approving NHDOC PPD 1.29 and 6.17."

   To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  See Estelle, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." Id. See also Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

    In my previous report and recommendation, I concluded that Smith alleged Eighth Amendment claims premised upon the denial of adequate medical care against Wrenn, Cattell, Crompton and Heath. Smith demonstrated deliberate indifference with respect to Wrenn, Cattell, Crompton and Heath by alleging that once they were notified of his serious medical needs through grievance forms, they nevertheless failed to provide him with adequate medical care and/or caused a delay in providing such care. With regard to Vinson, however, I concluded that Smith failed to allege a

cognizable Eighth Amendment claim.

Smith's amended complaint fails to cure the deficiencies in the Eighth Amendment claim against Vinson. Smith has not alleged sufficient facts to demonstrate that Vinson acted with deliberate indifference to his serious medical needs. The amended complaint broadly alleges that Vinson "displayed a callous and knowing indifference" to [Smith's] health and safety" by approving certain prison policies, and by failing to implement others that would require a transferred inmate to be monitored while in transit and to be provided with adequate medical care. There is no indication, however, that Vinson had knowledge of Smith's specific medical conditions and the alleged denial of adequate medical care. Although Smith filed an inmate request slip with Vinson on July 1, 2007, the inquiry was limited to Vinson's involvement in reviewing prison policies. The allegations in the amended complaint, therefore, are insufficient to demonstrate that Vinson acted with deliberate indifference to Smith's serious medical needs. Accordingly, I conclude that Smith has failed to allege sufficient facts to state a cognizable Eighth Amendment claim against Vinson and recommend dismissal of this claim.

II. Official Capacity

In his motion for reconsideration and amended complaint,

Smith alleges that he sues the defendants for monetary relief in their individual capacities, and for declaratory and injunctive relief in their official capacities.

The Eleventh Amendment bars suits for damages against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity actions against state actors for prospective injunctive relief, however, are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  Here, Smith's amended complaint asserts that he seeks only declaratory and injunctive relief against the defendants in official capacities as NHDOC or NHSP employees.  Accordingly, his official capacity claims for prospective injunctive relief against the defendants are not barred.

CONCLUSION

For the reasons stated above, Smith's motion for reconsideration is granted.  I find that he has alleged Fourteenth Amendment due process claims against Wrenn, Vinson and Cattell.  I recommend dismissal of all remaining claims.  Accordingly, by separate order issued simultaneously with this report and recommendation, I authorize the above claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the amended complaint.  If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this report and recommendation, or he must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete,

13

792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date: November 27, 2007

cc:   Dennis A. Smith, pro se