```
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Dennis A. Smith,
     Plaintiff

     v.                                  Civil No. 07-cv-119-SM
                                         Opinion No. 2009 DNH 097
William Wrenn, Commissioner,
N.H. Department of Corrections;
Bruce Cattell, Warden, N.H. State Prison;
Gregory Crompton; and Denise Heath,
     Defendants
```

**O R D E R**

Pro se plaintiff, Dennis Smith, is a New Hampshire prisoner currently incarcerated in Huntsville, Texas, pursuant to the Interstate Corrections Compact. He brings this action seeking compensatory and punitive damages, as well as declaratory and injunctive relief, for alleged violations of his constitutionally protected rights. His claims arise out of his involuntary transfer from the New Hampshire State Prison ("NHSP") to Texas and the alleged denial of his right to adequate medical care, both during his transportation to Texas and after his arrival there.

Defendants move for summary judgment, asserting that: (a) Smith's claims are barred by the doctrine of res judicata; (b) there is an insufficient factual basis to support those claims; and (c) Smith failed to comply with the exhaustion requirements

of the Prison Litigation Reform Act.  Because the court agrees that Smith failed to properly exhaust available prison administrative remedies, he cannot proceed on the claims raised.

**Standard of Review**

I.   <u>The PLRA's Administrative Exhaustion Requirement</u>.

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (emphasis supplied).  The Supreme Court has held that section 1997e requires an inmate to exhaust all available administrative processes before filing a federal suit relating to the conditions of his or her confinement, even if some or all of the relief the inmate seeks cannot be obtained through those administrative processes.  <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money.  We hold that he must.").

Subsequently, the Supreme Court made explicit that which was implicit in Booth: the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision, includes within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002). And, the Court has held that "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). The Court explained that "proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules." Id. at 90. So, to properly exhaust available administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)).

II.  The NHSP's Administrative Grievance Procedure.

The NHSP has a three-tiered administrative grievance procedure. See Exhibit C to defendants' memorandum, New

Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 1.16, entitled "Complaints and Grievances by Persons under DOC Supervision" (document no. 144-5). See also LaFauci v. N.H. Dep't of Corrections, 2001 DNH 204 at 7-10 (D.N.H. Oct. 31, 2001) (discussing the grievance procedure in detail).

In October of 2002, those administrative regulations were amended to provide, among other things, that inmates must invoke the grievance process within 30 calendar days of the date on which the event(s) forming the basis of any complaint occurred. PPD 1.16 IV. At the lowest level of the administrative process, inmates are instructed to resolve their complaints orally if possible. If that proves unsuccessful, they may file a written complaint or request for information, known as an "inmate request slip" or "IRS." If an inmate is not satisfied with the response to his request slip, he has an additional 30 days within which to invoke the second administrative step by filing a grievance with the warden. And, finally, if the inmate is dissatisfied with the warden's response, he is afforded another 30 days within which to file a grievance with the Commissioner of Corrections. The administrative regulations provide that corrections officials retain the authority to waive any of those administrative deadlines if the inmate shows a "valid" reason for delay. Id.

4

The NHSP's deadlines are mandatory and, absent a waiver, failure to comply with them will result in the inmate's request being denied as untimely. Here, defendants assert that because Smith's efforts to exhaust the prison's administrative remedies were untimely, and because he did not obtain (or even seek) a waiver of those deadlines, he is now precluded from exhausting. See generally Woodford v. Ngo, supra. Consequently, say defendants, his claims must be dismissed.

**Background**

In conducting his initial review of Smith's complaint, the Magistrate Judge set forth the factual background to this suit in substantial detail. See Report and Recommendation (document no. 26) at 3-7. Accordingly, the pertinent facts need be recounted only briefly.

Smith is a New Hampshire inmate who was, until mid-2004, housed at the New Hampshire State Prison. In August of that year, prison officials decided to transfer him to another correctional facility. Accordingly, defendant Heath prepared a transfer packet which included, among other things, a "Health Center Transfer/Discharge Summary" – a document outlining Smith's medical conditions, current medications, vaccinations, etc. She received Smith's medical information on approximately September

13, 2004, and forwarded the transfer packet to Texas officials on September 29, 2004.  On November 5, 2004, Texas officials agreed to take Smith.

On November 23, while he was still confined at NHSP, Smith was seen by a nurse practitioner who diagnosed him as having elevated blood pressure and prescribed Vasotec, 20 milligrams per day, for one year.  Defendants admit that Smith's transfer packet, which had previously been provided to Texas officials, was never updated to include the diagnosis of hypertension or the prescription for Vasotec.  Consequently, Smith says he was deprived of adequate medical care from the time he left New Hampshire (December 16, 2004), through his arrival in Texas (which he says was January 5, 2005), and continuing for some period thereafter during his incarceration in Texas.

On January 18, 2005, Smith says he was transported to the Estelle High Security Facility, in Huntsville, Texas, where, shortly after his arrival, he received a medical examination.  He claims that exam was limited to a review of the conditions listed in his transfer packet and, therefore, did not include anything related to his hypertension.  And, says Smith, when he asked the examining medical provider to review the order for Vasotec, he was told that such an order did not exist and, even if it did,

his blood pressure was normal.  Smith says the medical provider refused to contact New Hampshire authorities about his blood pressure, saying that if an active order for prescription blood pressure medication existed, it would be reflected in Smith's medical records.  For his part, Smith claims he did not pursue the matter because he assumed the prescription must have expired.

On June 26, 2005 – approximately five months later – Smith sent an inmate request slip to the New Hampshire State Prison Medical Records Administrator, requesting information about the date on which he had been diagnosed with hypertension and the medication that had been prescribed.  Complaint, Exhibit C (document no. 4-2), at 9.  Smith was provided with the requested information on July 6, 2005.  Id.  On October 2, 2006 – approximately 15 months later and nearly two years after his arrival in Texas – Smith sent an inmate request slip to defendant Heath, accusing her of intentionally interfering with his medical treatment.  Complaint, Exhibit E (document no. 4-2), at 11-13.  Heath responded by letter dated October 17, 2006 and, among other things, explained that she was unaware that he had been diagnosed as hypertensive after she prepared the transfer packet, denied having intentionally sought to interfere with his medical treatment, and recommended that he seek an examination and/or

treatment by medical staff at the Texas facility and obtain any necessary medications from them.  Id. at 14.

On October 29, 2006, Smith filed a grievance with the warden, complaining that NHSP officials were "utilizing the transfer process to intentionally interfere" with the medical treatment of his hypertension.  Complaint, Exhibit G (document no. 4-2), at 18.  And, on December 19, 2006, Smith sent a similar grievance to the Commissioner of Corrections.  Complaint, Exhibit I (document no. 4-3) at 21.  Displeased with the responses he received to those grievances, Smith filed the instant suit.

**Discussion**

I.  Defendants' Motion for Summary Judgment.

As construed by the Magistrate Judge, Smith's amended complaint sets forth the following claims: (a) Eighth Amendment claims against defendants Wrenn, Cattell, Crompton, and Heath, premised on the denial of adequate medical care; and (b) Fourteenth Amendment due process claims against defendants Wrenn, Cattell, and Vinson, premised on the contention that Smith was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life.  See Report and Recommendation (document no. 26); Report and Recommendation

(document no. 58). See generally Sandin v. Conner, 515 U.S. 472 (1995).

It is likely that all of the claims Smith is currently pursuing are, by virtue of his prior lawsuit against virtually identical defendants and arising out of the same basic facts and circumstances, barred by the doctrines of res judicata and/or collateral estoppel. See Smith v. Warden, Civ. no. 05-cv-374 (civil rights complaint arising out of Smith's transfer to Texas, advancing claims of, among other things, retaliatory transfer and violations of various constitutionally protected rights). Moreover, given the facts of record, even if Smith's claims are not barred, they would probably fail on the merits. Even charitably construed in Smith's favor, the record reveals that, at the very most, defendants may have been negligent in failing to update his medical records. It is, however, well-established that mere negligence does not equate to "deliberate indifference" and, therefore, cannot form the basis of a viable Eighth Amendment claim. See, e.g., Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) ("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent . . . . does not state a valid claim of

medical mistreatment under the Eighth Amendment.") (citations and internal punctuation omitted); Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation.").

Nevertheless, the court cannot address the preclusive effect of Smith's prior litigation, nor can it consider the merits of his constitutional claims, because it is plain that he failed to timely exhaust available administrative remedies, as required by the PLRA.

As noted above, the NHSP administrative regulations clearly and unambiguously provide that an inmate must initiate the three-tiered inmate grievance process within 30 days of the event(s) of which he complains.  Here, the record is unambiguous — by January 18, 2005 (and probably earlier), Smith knew that the medical records provided by NHSP to Texas corrections officials contained no reference to either his hypertension or the prescription for Vasotec.  See Complaint, Exhibit 1, Smith declaration at para. 15.  Nevertheless, Smith did not begin the inmate grievance process until June 26, 2005 - more than six months later - when he inquired about his diagnosis and prescription medications.

Complaint, Exhibit C (document no. 4-2), at 9.  And, he never appealed the response to that IRS to the warden or the commissioner.  So, not only was the IRS untimely, it was incomplete insofar as Smith failed to appeal to either of the two remaining (compulsory) administrative levels.

The only grievance concerning his medical records/ prescription that Smith appears to have made at each of the three administrative levels was first filed (as an inmate request slip) on October 2, 2006 - more than 18 months after Smith became aware of the underlying issues of which he now complains.  Complaint, Exhibit E (document no. 4-2), at 11-13.  Plainly, Smith failed to comply with the administrative regulation's compulsory 30-day limitations period.  Consequently, he did not "properly exhaust" available administrative remedies as required by the PLRA.

Smith's efforts to side-step the administrative filing deadlines are unavailing.  First, he says that although he was aware of the issue in January of 2005, the fact that he was "faced with an indigent postal limit influenced [his] decision not to pursue the issue."  Smith Declaration at para. 15.  Smith is alluding to a Texas Department of Corrections regulation allegedly limiting indigent prisoners to five mailings per week.  But, as Smith well knew, he had 30 days within which to initiate

the grievance process and raise his claims related to his medical records and prescription.  So, even assuming he is correct about the mailing limit imposed on him, he could have mailed more than 20 items during that 30-day period.  It necessarily follows that he could have filed a single inmate request slip in a timely manner, notwithstanding the alleged limit on how much mail he was permitted to send each week.

Next, Smith claims that, at least upon his arrival in Texas, he simply assumed the prescription for Vasotec had expired and had no reason to suspect that defendants had omitted information concerning his prescription from his transfer packet.  Smith Declaration at para. 15.  At least implicitly, then, Smith suggests that he did not have all the necessary facts to appreciate that he had been harmed by defendants' (alleged) wrongdoing and, therefore, there was no basis for him to begin the grievance process.  That claim is, however, without factual support since, as he repeatedly points out, he knew, when he arrived in Texas, that the prescription had been written for 20 milligrams per day, for one year.  See, e.g., Complaint at para. 28.  And he knew that information relating to both his diagnosis and his prescription had been omitted from the transfer packet provided to Texas corrections officials.

But, even crediting Smith's claimed lack of knowledge, he cannot deny that he was aware of the issue as of July 6, 2005, when, in response to his inmate request slip, the NHSP Medical Records Director informed him that, "[r]eview of medical records shows that Mooney, ARNP diagnosed HTN [hypertension] as new diagnosis on 11/23/04 and ordered Vasotec 20 mg. p. day x 1 year." Complaint, Exhibit C (document no. 4-2), at 9. At the very least, then, by July of 2005, Smith knew that:

- (a) he had been diagnosed as hypertensive on November 23, 2004;

- (b) on that same date, he was given a one-year prescription for Vasotec; and

- (c) that information had been omitted from the transfer packet sent to Texas officials.

Nevertheless, he still waited another fourteen months before filing an inmate request slip complaining about that issue (and following-up on that IRS with grievances to the warden and commissioner). See Complaint, Exhibit E (document no. 4-2), at 11-13.

Finally, Smith suggests that "N.H. DOC PPD 1.16 does not apply to me." Plaintiff's memorandum, Exhibit 1, Declaration in Opposition to Summary Judgment (document no. 147-3) at para. 4. Specifically, Smith points to a recent (March 16, 2009) inmate request slip inquiring about the person to whom he should direct

13

his inmate request slips. <u>See</u> Document no. 147-5. In response to his inquiry, Smith says he was informed (erroneously) that, because he had been transferred to an out-of-state correctional facility, New Hampshire's grievance procedure no longer applied to him. And, says Smith, he was entitled to rely upon that erroneous information. He is incorrect.

The three-tiered grievance process plainly and unambiguously applies to "all inmates, former inmates for issues that arose during their confinement, and staff." PPD 1.16 (document no. 144-5), Section II, entitled "Applicability." And, the PLRA's exhaustion requirement applies even when, as here, the inmate has been transferred to another correctional facility. <u>See</u> <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 35 (1st Cir. 2002). <u>See also</u> <u>Booth</u> 532 U.S. at 735 n.2. Smith obviously understood that the NHSP grievance process still applied to him, as evidenced by his repeated communications (from Texas) with NHSP staff, using NHSP inmate request slips. Moreover, he cannot claim that he relied to his detriment on the faulty information he received in March of 2009, because he received that erroneous interpretation of the PPD's well after the events giving rise to his constitutional claims (November, 2004 through January, 2005), <u>and</u> well after the thirty day administrative filing deadline had

lapsed, and well after he made his untimely efforts (in October of 2006) to exhaust the NHSP administrative grievance procedures.

Smith's actions plainly and unequivocally demonstrate that he understood that, notwithstanding his transfer to Texas, the NHSP's inmate grievance procedures still applied to him – at least to the extent he was raising issues related to his period of incarceration in New Hampshire.  And, it is equally plain that Smith failed to timely exhaust available prison administrative remedies as to the constitutional claims he now seeks to pursue. Nor did he seek a waiver of the administrative filing deadlines. Consequently, Smith's claims – all of which are unexhausted – are precluded by the PLRA.

II.  Plaintiff's Motion to Stay Proceedings.

Smith moves the court to stay any ruling on defendants' motion for summary judgment until he has been afforded additional time within which to "preserve for appeal" his request for appointed counsel.  Smith's repeated requests for appointed counsel have been addressed (and denied) several times.  See, e.g., Docket entries dated December 3, 2007 (denying Smith's motion for reconsideration on the issue of appointment of counsel) and April 30, 2009 (denying another of Smith's motions for reconsideration on the issue of appointment of counsel).  At

this point, the court has resolved all of his pending motions (and motions for reconsideration) on that issue.  Smith has not shown that he is entitled to a stay.  His motion is, therefore, denied.

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memoranda, defendants' motion for summary judgment (document no. 144) is granted to the extent the complaint is dismissed for failure to exhaust available administrative remedies.  Smith's motion to stay (document no. 152) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 29, 2009

cc:  Dennis A. Smith, <u>pro se</u>
     Danielle L. Pacik, Esq.
     Nancy J. Smith, Esq.
     John C. Vinson, Esq.